COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Bray and Senior Judge Duff
Argued at Alexandria, Virginia


RONALD CHARLES CRABTREE

v.    Record No. 1365-95-4          MEMORANDUM OPINION[*] BY
                                CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA                  JUNE 4, 1996


              FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
                   Joshua L. Robinson, Judge Designate

              William J. Holmes, (Darlene R. Langley;
              Langley & Langley, P.C., on brief), for
              appellant.

              Kathleen B. Martin, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.


        Ronald Charles Crabtree appeals his conviction of aggravated

sexual battery of a female child less than thirteen years of age.

 Crabtree argues that the trial court erred in allowing evidence

of similar acts of sexual battery to be used against him, and in

instructing the jury concerning the permissible use of this

evidence.  Crabtree also argues that the trial court erred in

excluding expert testimony that he is not a pedophile, and in

quashing subpoenas duces tecum seeking access to the medical and

mental health records of the victims.  Because we find that the

jury instruction concerning permissible use of the "other crimes"

evidence was defective, we reverse the conviction.

        On October 12, 1994, Ronald Crabtree was charged with

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

aggravated sexual battery on Amanda, Maggie, and Sarah Grace Gilbert, all of whom were less than thirteen years of age when the offenses occurred. Crabtree was an employee and friend of the Gilbert family. At the time of trial, Amanda was nineteen years of age, Maggie was eighteen, and Sarah was twelve.

The trial court initially denied the Commonwealth's motion for a joint trial on the three indictments, and Sarah's case was set first. The defendant filed a motion in limine to exclude from Sarah's trial evidence of Crabtree's misconduct toward Amanda and Maggie, as well as evidence of misconduct which occurred outside the time specified in the indictment. The trial court sustained the motion. The case for sexual battery of Sarah ended in a mistrial, with the jury unable to reach a verdict.

On December 30, 1994, the trial court denied Crabtree's motion in limine to exclude evidence of other offenses from Amanda's case. The judge indicated that the same ruling would apply to Sarah's and Maggie's cases. The trial was rescheduled, and the trial judge then recused himself from all three cases. A new judge was appointed.

On December 30, 1994, Crabtree requested subpoenas duces tecum to obtain the victims' medical records from Shenandoah County Memorial Hospital and their mental health records from Northwestern Community Services. The Commonwealth did not object to the subpoenas, and both the hospital and the health center produced their records. The Gilbert family retained an attorney, who moved to quash both subpoenas. The requests for subpoenas

were made by means of motions that asserted materiality, but were not accompanied by affidavits as required by Rule 3A:12(b). The trial court quashed both subpoenas, finding that the defendant had not shown that the requested records were material, and ordered the records held under seal.

On January 11, 1995, Crabtree filed a motion to reconsider the court's decision on the motion in limine. On March 27, 1995, the court heard testimony from the three sisters. Amanda testified that she rode horses with Crabtree beginning in 1984. When he assisted her in mounting the horse, Crabtree would place his hand palm up in the crotch of her pants and she could feel his finger rubbing her. On one occasion Amanda would not mount the horse, and Crabtree asked her what she was worried about. He then stated that "it was only a little goose, and not to be worried about it." This form of touching ended by 1986 when the Gilberts acquired their own horses and rarely rode with Crabtree.

Also beginning in 1984, the Gilberts built a reservoir and Amanda sometimes swam there with Crabtree. On occasions when just the two of them were swimming and Amanda was climbing up the ladder, Crabtree put his hand on her crotch as he did when she mounted the horse. On one occasion, her bathing suit slipped aside and he inserted a finger into her vaginal area. This form of touching ended when Amanda was about twelve years old.

Maggie described similar incidents of touching while Crabtree helped her onto one of his horses. These incidents ended when she was about twelve. Maggie also testified that on

one occasion when she was about fourteen Crabtree placed his hand on her buttocks when she was climbing out of the reservoir.

Sarah testified that in the summer of 1994, when she was eleven years old, she swam with Crabtree in the swimming pool near Crabtree's home. On several occasions while he was swimming laps, Crabtree reached out and touched her vaginal area and then continued swimming. On one occasion his hand slipped inside her bathing suit.

The court ruled that the three girls could each testify at all three trials because the evidence of other offenses was relevant to show the "disposition" of the defendant toward the offense charged. The Commonwealth renewed its motion for joinder, and due to the court's ruling on the motion in limine the defendant agreed. At the court's request, defense counsel drafted a jury instruction that reflected the judge's opinion on evidence of "disposition" but also sought to place limits on use of the "other crimes" evidence. The court struck certain material favorable to the defense from the proposed instruction. The jury convicted Crabtree in Sarah's case but acquitted him in both Amanda's and Maggie's cases. The court imposed the recommended sentence of one year's imprisonment and a hundred dollar fine.

## EVIDENCE OF OTHER CRIMES

After the court ruled against him on the motion in limine, Crabtree agreed to joinder of the three trials. Therefore, he has waived the argument that the trial court erred in allowing

- 4 -

the testimony about other crimes to be presented at all.  We limit our consideration to the court's instruction concerning use of this testimony.

In general, evidence that shows or tends to show that the accused committed other crimes is not admissible for the purpose of proving that the accused committed the crime charged.  Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  However, evidence of prior crimes may be admissible if it tends to prove any other relevant fact of the offense charged.  Black v. Commonwealth, 20 Va. App. 186, 192, 455 S.E.2d 755, 758 (1995).  For example, such evidence is admissible to show the motive, intent, or knowledge of the accused, the conduct or attitude of the accused toward his victim, the relationship between the parties, and the accused's modus operandi.  Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990), cert. denied 498 U.S. 908 (1990); Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981).  Evidence of other crimes is also admissible to negate accident or mistake, and where the crimes constitute part of a general scheme or plan.  Moore, 222 Va. at 76, 278 S.E.2d at 824; Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805.

The trial court did not admit the evidence under one of these standard exceptions.  Instead, the court admitted the evidence for the purpose of showing the "disposition" of the defendant toward the offense charged.  The term "disposition" in this context is drawn from Stump v. Commonwealth, 137 Va. 804,

808, 119 S.E. 72, 73 (1923), where the Court held that evidence of subsequent sexual contact between the prosecutrix and the accused in a statutory rape case was admissible to show "the disposition of the defendant with respect to the particular act charged."  This language has been cited in other cases, including Marshall v. Commonwealth, 5 Va. App. 248, 254, 361 S.E.2d 634, 638 (1987), where the Court upheld admission of evidence of prior sexual contact with the same victim.

These cases do not uphold use of "other crimes" evidence in sexual assault cases to show simply that the defendant had the disposition--or predisposition--to commit the type of offense charged.  Evidence offered solely for this purpose must be excluded.  See Day v. Commonwealth, 196 Va. 907, 912-14, 86 S.E.2d 23, 26 (1955).  The term "disposition" as used in these cases encompasses several of the recognized exceptions to the rule excluding evidence of other crimes, particularly the exceptions allowing "other crimes" evidence to show the conduct or attitude of the accused toward the victim and the relationship between the victim and the accused.  See Morse v. Commonwealth, 17 Va. App. 627, 631-32, 440 S.E.2d 145, 148 (1994); Moore, 222 Va. at 76-77, 178 S.E.2d at 824-25.

In the instruction here, the term "disposition" was not used in this narrow sense, nor did the instruction list any of the specific, recognized exceptions to the rule excluding evidence of other crimes.[1]  Instead, the court instructed the jury that the

_____

[1] The instruction offered by the defendant, with the

language stricken by the judge shown in bold, is as follows:

This case consists of three separate charges which have been combined into one trial. Each of these three charges must be considered separately and the evidence of each evaluated independent of the others. Thus, for each of the three indictments, you must consider all of the evidence which relates to that alleged offense and reach a verdict. The verdicts for each of the indictments may, but do not need to, be the same. You must exercise your independent judgment on each indictment.

You have heard testimony from three different complaining witnesses in this case. Each of these three witnesses have testified about their own allegations against the defendant and their testimony may be considered as evidence relating to the respective indictment. With regard to each indictment, you may also consider the testimony of the other two witnesses if, and only if, you find and believe beyond a reasonable doubt that the defendant actually committed actions other than those alleged in each separate indictment, if any were actually committed, and even then you may only consider this evidence for whatever purpose it may have to show the disposition of the defendant with respect to the particular act charged and for no other purpose. You may not use the evidence of the other two witnesses **in any manner** to conclude that the defendant is a bad person or has a propensity to engage in the type of acts which are charged in the indictments. **In other words, you cannot infer that the defendant is predisposed to commit these types of actions.** Similarly, even if you believe beyond a reasonable doubt that the defendant may have committed some acts other than those contained in the indictment, this evidence may not be considered by you as indicating in any way that it is likely that the defendant is guilty of the offense for which he is on trial simply because of the nature of any such conduct. Such evidence is not admissible for the purpose of determining

evidence of other offenses could be used "to show the disposition of the defendant with respect to the particular act charged." The instruction also stated that such evidence could not be used to conclude that the defendant has "a propensity to engage in the type of acts which are charged in the indictments." While this is a correct statement of the law, it is insufficient to negate the ambiguity created by the earlier statement, and also rendered the instruction internally inconsistent.

In <u>Marshall</u>, the Court considered the type of instruction that must be given when the court has allowed evidence of other sexual offenses--in that case, another instance of incest against the same victim. The Court stated that "[t]he right of the defendant to a fair trial required that the trial court here instruct the jury in clear and specific terms as to the purpose for which the evidence [of other crimes] was admitted and the limitations of the consideration thereof." <u>Marshall</u>, 5 Va. App.

whether or not he committed the offense alleged in the indictment, but may only be used to show his disposition. **As I stated earlier, you must be convinced beyond a reasonable doubt by the evidence in this case before any finding of guilty can be announced.** **Such** a finding cannot be based upon any claim or inference of the defendant's bad character or propensity to commit these types of act [sic]. **However, evidence of the defendant's good character may be considered to show the probability of his innocence and may be sufficient to cause a reasonable doubt about his alleged guilt to these indictments. Such evidence must be considered along with all of the other facts and circumstances in this case.**

at 257, 361 S.E.2d at 640.

The instruction in this case fell well short of the standard set forth in Marshall.  As noted, the instruction was internally inconsistent, and did not set forth in clear and specific terms the purposes for which the evidence could be used on these facts--for example, to demonstrate the absence of mistake or accident.  See Virginia Model Jury Instructions, Instruction No. 2.260 (1993).  Where the court's instructions to the jury are both erroneous in part and conflicting, "we cannot hold that the jury divined what conclusions it could draw from the evidence." Jones v. Commonwealth, 11 Va. App. 75, 81, 396 S.E.2d 844, 847 (1990).

The errors in the instruction require reversal even though Crabtree--at the behest of the trial judge--offered the defective instruction.[2]  The defendant also offered the instruction in Marshall, and the Court held that having admitted the other crimes testimony, it was reversible error for the trial court to fail to properly instruct the jury as to the limited purpose of the evidence.  Marshall, 5 Va. App. at 257, 361 S.E.2d at 640. The same is true here.

---

[2] Crabtree objects to the instruction on the ground that the trial court struck from it certain language favorable to the defense.  The language struck by the trial court was largely redundant of other material in this and other instructions, and therefore Crabtree's specific objection to the instruction lacks merit.  Nonetheless, reversal is appropriate under the principles set forth in Marshall.

## EVIDENCE ON STATUS AS A PEDOPHILE

Finding the evidence irrelevant, the trial court excluded the testimony of a psychologist that appellant did not meet the definition of a pedophile. "Evidence is relevant in the trial of a case if it has any tendency to establish a fact which is properly at issue." Morris v. Commonwealth, 14 Va. App. 283, 286, 416 S.E.2d 462, 463 (1992) (en banc). The Commonwealth was required to prove that Crabtree sexually abused a victim who was less than thirteen years of age. Code § 18.2-67.3(A)(1). It was not necessary for the jury to decide whether Crabtree was a pedophile, and the psychologist's opinion therefore had no tendency to prove or disprove an issue in the case. The trial court did not err in excluding this evidence.

## SUBPOENAS DUCES TECUM

Rule 3A:12(b) requires that a request for a subpoena be accompanied by an affidavit asserting the materiality of the records. The subpoenas here were not accompanied by an affidavit, and therefore the trial court's action to quash the subpoenas was proper under Rule 3A:12(b). Moreover, even if Crabtree's motions made a proper showing of materiality, the trial court's decision to quash the subpoenas cannot be reversed absent a showing of prejudice. Gibbs v. Commonwealth, 16 Va. App. 697, 699, 432 S.E.2d 514, 515 (1993). Review of the medical and mental health records indicates that Crabtree suffered no prejudice due to the trial court's decision to quash the subpoenas.

– 10 –

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for such further action as the Commonwealth may be advised.

<u>Reversed.</u>
